John T. PARKOS

v.

Sheila SEARCY, d/b/a Chicago
Dough Factory.

No. 90–412–Appeal.

Supreme Court of Rhode Island.

May 1, 1991.

Gregory Fater (Martellino, Fater & Updegrove), Newport, for plaintiff.

Christopher J. Behan, Joseph Palumbo, Jr. (Palumbo, Galvin & Boyle), Middletown, for defendant.

## OPINION

### PER CURIAM.

This is a trespass-and-ejectment action. On April 12, 1991, the defendant, Sheila Searcy (Searcy), d/b/a Chicago Dough Factory, appeared before this court to show cause why her appeal from a Superior Court judgment in favor of her landlord, John T. Parkos (Parkos), should not be summarily denied.

The record indicates that on September 9, 1987, Parkos filed a complaint in Second Division District Court, seeking to have Searcy evicted from his premises pursuant to the Commercial Landlord Tenant Act, G.L. 1956 (1984 Reenactment) chapter 18.1 of title 34, as enacted by P.L. 1986, ch. 200, § 8. Searcy operated a restaurant on commercial premises located at 200 Broadway in Newport, Rhode Island, which were owned by Parkos.

On July 31, 1987, Parkos notified Searcy that her oral lease providing for a month-to-month tenancy would terminate as of September 1, 1987. However, Searcy failed to vacate the premises on that date and now claims that she is entitled to remain in possession under a written lease-purchase agreement. In December 1987 a District Court judge found for Parkos and awarded him possession and rent arrearages. Searcy immediately appealed this action to the Superior Court.

After a jury-waived trial in the Superior Court, the trial justice issued a decision in which he ruled that the lease-purchase agreement did not satisfy the statute of frauds. Judgment was then entered in favor of Parkos for possession and rent arrearages. After judgment, however, the trial justice allowed Searcy to amend her answer in order to conform to the evidence at trial by adding a counterclaim seeking a declaratory judgment regarding the validity of the lease-purchase agreement. In January 1990 Searcy voluntarily relinquished possession of the property; consequently, the issues on appeal involve the validity of the lease-purchase agreement and Searcy's rights, if any, under that agreement.

On appeal Searcy argues that the lease-purchase agreement satisfies the statute of frauds. Moreover, she claims that even if the agreement is subject to the statute of frauds, she still may enforce the option to purchase under the doctrine of part performance.

General Laws 1956 (1985 Reenactment) § 9–1–4, in its pertinent parts, provides,

"No action shall be brought: (1) whereby to charge any person upon any contract for the sale of lands, tenements or hereditaments, or the making of any lease thereof for a longer time than one (1) year; * * * unless the promise or agreement upon which said action shall be brought or some note or memorandum thereof, shall be in writing, and signed by the party to be charged * * *." In *MacKnight v. Pansey*, 122 R.I. 774, 782, 412 A.2d 236, 241 (1980), this court emphasized that a memorandum is sufficient to satisfy the statute of frauds if it sets out the respective parties, their respective intents regarding whatever it is they agree to, the description of the subject matter, and the price and the terms of payments.

Rhode Island law also requires that certain conveyances of real property, including leases, be written and recorded. G.L. 1956 (1984 Reenactment) § 34–11–1. The memorandum "shall contain the names of the parties to be charged, a description of the real estate, the duration of the lease, including renewal options and purchase options." *Id.*

We are of the belief that the lease in question fails to satisfy the requirements of the statute of frauds because it does not meet the above-described requirements for a proper memorandum.

The lease-purchase agreement was executed on December 13, 1984, and the parties to the agreement were Richard Searcy, trustee of the Bradford Trust and Cafe 200, Inc., and Parkos, who is referred to as the "lessor." Throughout the lease, however, the parties are incorrectly identified: the "lessee" is leasing the property, and the "lessor" is renting the property. Consequently it is apparent that the intentions of the parties to this document are, to say the least, unclear.

The trial justice found that the parties intended to review the document after Parkos returned from a trip to Florida. The trial justice, in reviewing the evidence adduced at trial, observed that the lease had been prepared in haste and that both parties had merely agreed to agree.

Another requirement of satisfying our statute of frauds is a description of the property. The lease states that the property is "known as and numbered 200 Broadway, more particularly on Exhibit 'A' attached hereto and made a part thereof." However, the attorney who drafted the lease testified that the exhibit was never attached to the lease.

Also conspicuous by its absence in the lease are such matters as the price and the terms of payment. The drafter of the lease testified that at the time Parkos signed the lease, an amortization schedule that is referred to in the lease had not been prepared and that consequently Searcy was not aware of the beginning or the ending of the term.

Finally, the signature of the party to be charged leaves something to be desired. The trial justice ruled that Parkos had signed the lease in his capacity as corporate officer of Cafe 200, Inc., and not as an individual. As a result, since the owner of the premises is Parkos, individually, no writing has been signed by the party to be charged.

Consequently Searcy's appeal is denied and dismissed.